# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

| | |
|---|---|
| TYLER SIMS, | : |
| | : |
| Plaintiff, | : |
| | : |
| | : |
| v. | : Civil Action No. _____ |
| | : |
| NEWREZ, LLC, d/b/a SHELLPOINT | : |
| MORTGAGE SERVICING, | : |
| | : |
| Defendant. | : |
| _____ | : |

## COMPLAINT

Plaintiff, Tyler Sims, by counsel, files this Complaint against Defendant, NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"). In support of his claims, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1.     This case demonstrates that, as the entities that perform the day-to-day management of loans, "servicers can have a direct and profound impact on borrowers."[1] Here, Plaintiff fully met his insurance obligations. Yet, the servicer of his home loan, Shellpoint, erroneously force-placed a third-party insurance policy

_____

[1] *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified at 12 C.F.R. pt 1024).

on his mortgage account, which increased his mortgage payment. Plaintiff continued to pay his monthly mortgage on time while he disputed the additional insurance amount with Shellpoint. Even though Shellpoint later acknowledge that the force-placed insurance policy was incorrect and removed it, it failed to remove the late fees and other charges that it added to Plaintiff's account as a result of the incorrect force-placed insurance policy.

2.      Even worse, Shellpoint began reporting Plaintiff's mortgage payments late to the credit bureaus. It appears that this late reporting is based on Plaintiff's failure to pay late fees and other charges resulting from the force-placed insurance—none of which Plaintiff owed. Regardless, Plaintiff was not behind on his mortgage. Nonetheless, despite repeated correspondences and telephone calls, Shellpoint has refused to correct its error.

3.      A homeowner should not have to file a lawsuit in order to correct his loan servicer's accounting error. Indeed, Congress enacted the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 to protect consumers from this type of abusive and inaccurate servicing practice. RESPA imposes mandatory duties on mortgage servicers, including investigative duties when responding to a borrower's belief that his account is in error. 12 U.S.C. § 2605.

4.     In this case, had Shellpoint simply complied with its RESPA obligations, it would have corrected the error on Plaintiff's account and prevented the damages that Plaintiff incurred as a result of Shellpoint's conduct. Accordingly, Plaintiff alleges claims against Shellpoint under RESPA, 12 U.S.C. § 2605.

5.     RESPA provides for actual damages, statutory damages, costs, and attorney's fees for violations of certain mortgage servicer duties. The imposition of civil liability on servicers for the damage caused by their violations of the requirements of RESPA is essential to achieve RESPA's consumer-protection purposes because home mortgage servicers are incentivized "to look for opportunities to impose fees on borrowers to enhance revenues."[2] Indeed, this case exemplifies the type of far-reaching consequences noncompliance with RESPA can have on a homeowner. Here, Shellpoint has profited from assessing late fees on Plaintiff's account, while reporting derogatory and inaccurate information concerning him to the credit bureaus.

6.     The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, provides additional protections to consumers that are designed to protect the furnishing of derogatory, erroneous information by their mortgage servicer by

---

[2] *Id.*

imposing further investigative duties on servicers after the homeowner disputes the inaccuracy with the credit bureaus. 15 U.S.C. § 1681s-2(b)(1).

7.     Accordingly, Plaintiff also alleges FCRA claims for Shellpoint's failure to fully and properly investigate his disputes and to review all relevant information provided by the consumer reporting agencies.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 12 U.S.C. § 2605(f), and 15 U.S.C. § 1681(p).

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and Division and a substantial part of the events giving rise to his claims occurred in this District.

## PARTIES

10.     Plaintiff Tyler Sims is a consumer as defined by 15 U.S.C. § 1681a(c).

11.     Defendant Shellpoint is a limited liability company authorized to do business in Georgia through its registered offices in McDonough, Georgia. At all times relevant, Shellpoint was a mortgage loan servicing company governed by RESPA and a "furnisher" governed by the FCRA.

## FACTS

12.    Plaintiff is the owner of a condominium unit (the "Condo") in the Liberty Lofts & Townhomes Condominiums in Roswell, Georgia.

13.    Plaintiff purchased the Condo as his primary residence in November 2015.

14.    Plaintiff purchased the home with a mortgage, which is secured by a Deed of Trust.

15.    Plaintiff's Condo is governed by the Liberty Lofts & Townhomes Condominium Association (the "Condo Association").

16.    The Condo Association maintains a master casualty insurance policy for the benefit of The Condo Association and for all of the unit owners in Liberty Lofts & Townhomes (the "Master Policy").

17.    In addition to this Master Policy, Mr. Sims also has an individual insurance policy covering any improvements to the Condo and his personal property.

18.    Shellpoint began servicing Plaintiff's loan on January 30, 2018.

19.    From 2018 until early 2019, Shellpoint accepted the Master Policy as satisfying the insurance requirements of Plaintiff's mortgage and deed of trust.

20.    Despite owning the Condo since 2015 and never needing to submit the annual Master Policy renewal to his mortgage servicer, in or around May 2019,

Shellpoint assessed force-placed insurance on Plaintiff's mortgage because it had not received that year's renewal.

21.     Upon learning of the force-placed insurance policy, Plaintiff immediately called Shellpoint about the issue.

22.     A Shellpoint representative told Plaintiff that he needed to submit the Master Policy renewal to have the force-placed insurance policy removed.

23.     Plaintiff complied with all of Shellpoint's instructions and had the manager of his Condo's association email Shellpoint a copy of the Master Policy renewal on August 2, 2019.

24.     Shellpoint received proof of the Master Policy on August 2, 2019.

25.     Despite this, Shellpoint did not remove and refund the force-placed insurance policy from Plaintiff's mortgage until several months later.

26.     In the meantime, Plaintiff continued to make timely payments on his mortgage each month. He paid what was actually due on the loan, with the force-placed insurance premium removed from his monthly payment.

27.     Because Shellpoint did not remove the force-placed insurance premiums from Plaintiff's mortgage, Shellpoint started adding late fees and other charges to Plaintiff's account.

28.     Even worse, Shellpoint started sending Plaintiff several notices that he was had defaulted on his mortgage and that it intended to accelerate his loan and proceed with a foreclosure if he did not bring his loan current.

29.     To be clear, Plaintiff's monthly mortgage payment was sufficient to pay what he actually owed on his loan. The force-placed insurance policy and all of the late fees and charges were improper.

30.     Shellpoint also started reporting Plaintiff as delinquent to the credit bureaus.

31.     During this time, Plaintiff continued calling Shellpoint to dispute the placement of the force-placed insurance and the incorrect charges.

32.     Plaintiff spoke with several Shellpoint representatives who indicated that Shellpoint's accounting would be corrected and that the late fees would be reversed.

33.     Despite several calls, the issue was not corrected until November 2019, when Shellpoint finally removed the force-placed insurance from his account.

34.     Even then, however, Shellpoint still refused to reverse the late fees that were incurred as a result of the incorrect force-placed insurance charges.

35.     Plaintiff started submitting written disputes regarding the issue in January 2020. He submitted approximately four written disputes to Shellpoint between January 19, 2020 and March 28, 2020.

36.     Shellpoint again refused to correct its records.

37.     In July 2020, Plaintiff submitted a complaint to Shellpoint through the Consumer Financial Protection Bureau.

38.     Shellpoint responded to this dispute on July 15, 2020. This response was very confusing, as it stated that it had initially removed the force-placed insurance in November 2019, but reinstated it in July 8, 2020 based on his failure to comply with a notice that it sent to him on July 8, 2020.

39.     Shellpoint's response stated that a copy of the July 8, 2020 notice was attached to its response, but it was not. Instead, the only notice regarding force-placed insurance attached to Shellpoint's response was from 2019. Plaintiff never received force-placed insurance notice in July 2020.

40.     Shellpoint's response also included a notice dated November 1, 2019, which stated that proof of adequate insurance coverage had been provided.

41.     Despite this, Shellpoint did not remove any of the late charges from Plaintiff's account and it continued to report him as late to the credit bureaus.

42.     In order to have this incorrect information removed from his credit reports, Plaintiff submitted numerous disputes to Equifax, Experian, and Trans Union in July 2020, September 2020, October 2020, December 2020, and April 2021.

43.     Plaintiff's disputes indicated that the information that Shellpoint was reporting about his mortgage was incorrect and that his account should not have been marked as delinquent with a late payment history.

44.     Many of these disputes included documentation showing that Plaintiff had made timely mortgage payments during the months that Shellpoint was reporting him as late.

45.     In response to these disputes, the credit bureaus forwarded Plaintiff's disputes to Shellpoint.

46.     When it received these disputes, Shellpoint refused to conduct an adequate investigation and instead told the credit bureaus that the late payment history was correct and should remain on Plaintiff's report.

47.     Plaintiff also sent a Qualified Written Request to Shellpoint on April 1, 2021. This letter disputed Shellpoint's assertion that he had made late payments on his loan and the late fees that he had been charged. It also asked Shellpoint to send him his detailed transaction history, including a detailed breakdown of any charges,

expenses, or fees added to his account, copies of any telephone recordings, the servicing notes for his loan, and the invoices for charges that had been added to his account. Plaintiff's letter also asked that Shellpoint stop reporting him as late to the credit bureaus.

48.     In response to Plaintiff's Qualified Written Request, Shellpoint refused to investigate or correct the issues with Plaintiff's mortgage.

49.     Instead, Shellpoint sent Plaintiff a letter dated May 7, 2021 that conflicted with the information it had previously provided to him.

50.     This letter stated that the force-placed insurance was proper because he did not have enough insurance coverage to meet the requirements of his loan. It did not address the late fees assessed to his loan, and refused to correct any of the identified servicing errors.

51.     Shellpoint also refused to provide most of the documents that Plaintiff requested in his Qualified Written Request, including copies of telephone recordings and servicing notes (both of which would have corroborated Plaintiff's assertion that Shellpoint had previously acknowledged the servicing error and told him that the late fees would be reversed); the servicing notes or the invoices showing the improper charges and fees that had been assessed to his loan.

52.     Shellpoint's response also indicated that it would not correct its inaccurate reporting to the credit bureaus.

53.     Due to Shellpoint's conduct, Plaintiff suffered actual damages. His credit score has dropped significantly as a result of the inaccurate payment information that Shellpoint is reporting and he is afraid that he will be unable to obtain a favorable rate when he refinances his mortgage to get away from Shellpoint and its abusive mortgage servicing.

54.     Plaintiff has also suffered emotional distress as a result of Shellpoint's conduct, including stress and anxiety. He was afraid that Shellpoint's continued refusal to correct the inaccurate information would ultimately result in the loss of his home.

55.     Shellpoint's processing of consumer disputes was willful and carried out in reckless disregard for consumers' rights under the FCRA. For example, Shellpoint's conduct was willful because it was intentionally accomplished through intended procedures that prioritize efficiency over accuracy.

### COUNT ONE:
### Violation of RESPA, 12 U.S.C. § 2605(l)(3)

56.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

57.    As alleged above, Plaintiff provided Shellpoint with proof of existing insurance coverage in August 2019.

58.    Despite this, Shellpoint did not terminate the force-placed insurance on Plaintiff's mortgage until approximately three months later.

59.    Even worse, Shellpoint has still not corrected the late fees and other charges associated with its assessment of the force-placed insurance.

60.    Shellpoint's failure to terminate the force-placed insurance policy within 15 days of receiving confirmation of Plaintiff's existing insurance coverage and refund the Plaintiff all fees related to the force-placed insurance policy violated 12 U.S.C. § 2605(l)(3).

61.    As a result of Shellpoint's conduct, Plaintiff suffered concrete and particularized harm, including: a decreased credit score, the assessment of fees that he did not owe, and emotional distress, including aggravation and stress.

62.    Upon information and belief, discovery will demonstrate that Shellpoint's noncompliance with 12 U.S.C. § 2605(l) is a part of a pattern or practice of noncompliance with this statutory provision, including because this conduct was a result of Shellpoint's standard procedures applied to thousands of consumers in the last several years.

63.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Shellpoint for each of its violations of 12 U.S.C.§ 2605(k) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

## COUNT TWO:
### Violation of RESPA, 12 U.S.C. § 2605(e)(2)

64.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

65.     As alleged above, Plaintiff submitted a qualified written request to Shellpoint in April 2021, and Shellpoint received the request.

66.     Shellpoint violated 12 U.S.C. § 2605(e)(2) by failing to make appropriate corrections to Plaintiff's account, including removing all late fees and charges related to the force-placed insurance and correcting the inaccurate credit reporting regarding the loan.

67.     Shellpoint also violated 12 U.S.C. § 2605(e)(2) by failing to provide Plaintiff with most of the information he requested or to explain why the requested information was unavailable.

68.     As a result of Shellpoint's conduct, Plaintiff suffered concrete and particularized harm, including: a decreased credit score, the assessment of fees that he did not owe, and emotional distress, including aggravation and stress.

69.     Upon information and belief, discovery will reveal that Shellpoint's noncompliance with 12 U.S.C. § 2605(e)(2) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e). For example, the Consumer Financial Protection Bureau's consumer complaint portal shows that 4,123 complaints have been filed against Shellpoint as of June 17, 2021, including 126 complaints for failing to investigate an existing problem.

70.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Shellpoint for each of its violations of 12 U.S.C.§ 2605(e)(2) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

## COUNT THREE:
### Violation of RESPA, 12 U.S.C. § 2605(e)(3)

71.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

72.     Shellpoint violated 12 U.S.C. § 2605(e)(3) by continuing to provide derogatory information regarding the "late" payments during the 60-day period after Shellpoint received Plaintiff's April 2021 Qualified Written Request.

73.     Because of Shellpoint's conduct, Plaintiff suffered concrete and particularized harm, including the reduction of his credit score and emotional distress, including stress and aggravation.

74.     Upon information and belief, discovery will demonstrate that Shellpoint's noncompliance with 12 U.S.C. § 2605(e)(3) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e), including because this conduct was a result of Shellpoint's standard procedures that was used in responding to all Qualified Written Requests.

75.     Upon information and belief, Shellpoint does not have a procedure in place to freeze negative payment information when it receives a Qualified Written Request challenging the validity of the payment information.

76.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Shellpoint for its violations of 12 U.S.C. § 2605(e)(3) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

## COUNT FOUR:
### Violation of FCRA, 15 U.S.C. §1681s-2(b)(1)(A)

77.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

78.     On one or more occasion within the past two years, by example only and without limitation, Shellpoint violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute.

79.     When Plaintiff disputed his account with the credit bureaus, Shellpoint used a dispute system named "e-Oscar," which has been adopted by the consumer

reporting agencies and their furnisher customers (such as Shellpoint). E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

80. When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

81. Upon information and belief, the ACDV form is the method by which Shellpoint has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

82. Upon information and belief, Experian, Equifax, and Trans Union each forwarded Plaintiff's dispute via an ACDV to Shellpoint.

83. Shellpoint understood the nature of Plaintiff's disputes when it received the ACDV forms.

84. Upon information and belief, when Shellpoint received the ACDV form containing Plaintiff's dispute, Shellpoint followed a standard and systematically unlawful process where Shellpoint only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

85. Upon information and belief, when Shellpoint receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to

determine whether or not the information already in its computer system is itself accurate.

86.     As a result of Shellpoint's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized harm, including a decreased credit score and emotional distress, including aggravation and stress.

87.     Shellpoint's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Shellpoint was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

88.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Shellpoint in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT FIVE:
### Violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)

89.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

90.     On one or more occasion within the past two years, Shellpoint violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

91.     As Plaintiff detailed in the previous Count, Shellpoint has elected to use the e-Oscar system to receive FCRA from the consumer-reporting agencies.

92.     When it received the ACDV forms from the consumer-reporting agencies, Shellpoint did not review any of the documentation that Plaintiff attached to his dispute, which demonstrated that the late charges assessed to his account were incorrect.

93.     If Shellpoint had reviewed these documents, then it would have known that its previous reporting was incorrect and needed to be updated.

94.     Shellpoint also failed to consider the other information that the consumer-reporting agencies provided regarding Plaintiff's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

95.     Shellpoint knew the meaning of the several dispute codes used by the consumer-reporting agencies in e-Oscar.

96.     Shellpoint does not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer reporting agencies.

97.     Shellpoint understood Plaintiff's disputes and that he claimed the information was inaccurate.

98.     Despite this, Shellpoint did not update its incorrect reporting regarding Plaintiff's account.

99.     Because of Shellpoint's violations of 15 U.S.C. § 1681-2(b)(1)(B), Plaintiff suffered concrete and particularized harm, including but not limited to: a decreased credit score and emotional distress, including aggravation and stress.

100.    Shellpoint's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. §§ 1681n.

101.    In the alternative, Shellpoint was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Shellpoint; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

> Respectfully submitted,
> **TYLER SIMS**

**[SIGNATURE PAGE FOLLOWS]**

By:/s/ *Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey Nash, VSB #84261
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile : (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com

By: /s/ *Robert C. Khayat, Jr.*
Robert C. Khayat, Jr.
Georgia Bar No. 416981
KHAYAT LAW FIRM
75 14th Street, N.E. Suite 2750
Atlanta, GA 30309
Telephone: (404) 978-2750
Facsimile: (404) 978-2901
Email: rkhayat@khayatlawfirm.com

*Counsel for Plaintiff*